## W. C. HOWARD & CO. V. O. F. PARKS.

### No. 44.

**1. Evidence—Intent to Defraud Creditors.**—On a trial of the right of property levied on by attaching creditors of A., and claimed by P., his vendee, the claimant can not, for the purpose of disproving fraud and collusion in the transfer of the property to himself, and of showing a consideration therefor, give in evidence his petition (and the allegations therein) filed in a suit instituted by himself against A. after the levy of the attachment, and to which latter suit the attaching creditors were not parties.

**2. Joinder of Actions and Parties—Trial of the Right of Property.**—Where a lien is reserved in notes given for the purchase of personal property, on which notes a judgment not foreclosing the lien is recovered, and in that suit an attachment is issued and levied on the property covered by the lien, such contract lien may in the statutory action for the trial of the right of property be foreclosed and enforced against a claimant holding the property under transfer from the judgment debtor, and this without making the judgment debtor a party thereto. Justice Head dissenting.

**3. Lien—Waiver.**—A contract lien is not waived by suing out an attachment on the debt secured by such lien.

APPEAL from Johnson. Tried below before Hon. J. M. HALL.

*Tillman Smith*, for appellants.— 1. The trial court erred in holding that the contract lien of appellants could not be asserted and foreclosed in the trial of the right of property. The court had jurisdiction over the subject matter, and our law abhors a multiplicity of suits. Chambers v.

Cannon, 62 Texas, 293; Douglass v. Neil, 37 Texas, 547; Bourke v. Vanderlip, 22 Texas, 224; Smith v. Clopton, 4 Texas, 114; Johnson v. Heidenheimer, 65 Texas, 267; Fitzhugh v. Custer, 4 Texas, 391; Neill v. Keese, 5 Texas, 23.

2. When a note is secured by a mortgage or lien, the same is not lost, waived, or affected by bringing a suit on the note, and not in the suit foreclosing the lien. Cannon v. McDaniel, 46 Texas, 305; Byram v. Stout, 127 Ind., 195.

*Crane & Ramsey*, for appellee.— 1. In a suit of trial of right of property under our statute, the sole issue that can be tried as to the plaintiff is, by what authority he had caused the property to be levied on under his writ; and as to the claimant, by what right he resisted the execution of the writ. Wright v. Henderson, 10 Texas, 204; Wright v. Henderson, 12 Texas, 43; Gillian v. Henderson, 12 Texas, 48; Wootton v. Wheeler, 22 Texas, 338; Belt v. Raguet, 27 Texas, 471; Raysor v. Reid, 55 Texas, 266; Ferguson v. Herring, 49 Texas, 126; Mardis v. Johnson, 43 Texas, 225; Rev. Stats., arts. 4833, 4834, 4842, 4843.

2. If appellants relied on their mortgage lien, their remedy was to have brought their suit to foreclose same, making appellee a party thereto, and to have sued out a writ of sequestration. Rev. Stats., art. 4489; Morrow v. Shoat, 3 Ct. App. C. C., sec. 31.

3. By attaching the property herein, appellants, for the purposes of this controversy at least, thereby waived their mortgage lien. Jones on Chat. Mort., sec. 562; Prewit v. Root, 116 Mass., 410; Jackson v. Willard, 4 Johns. (N. Y.), 41.

HEAD, Associate Justice.—This is a suit, under the statute, for the trial of the right of property in certain machinery and live stock, which were owned by one W. F. Bachman and transferred by him to O. F. Parks. A short time after this transfer, appellants W. C. Howard & Co. sued out a writ of attachment against Bachman and had the same levied upon the property transferred to Parks as aforesaid. Parks filed his claimant's bond as required by law, with I. L. Dunn and C. A. Arnold as sureties, which bond was dated April 14, 1885.

In the issues between the parties in the suit for the trial of the right of property arises the question as to whether or not the transfer from Bachman to Parks was in fraud of the creditors of the former. It seems that Bachman and Parks were in partnership, and Parks claimed that a large amount of money he had furnished to be used in the partnership business had been fraudulently appropriated by Bachman to his own use and to the payment of his individual debts, without having been applied to the partnership business, and that when he learned this he had a settlement with said Bachman, in which the latter was found to be indebted to

him for the money so misapplied in the sum of $5400, and the transfer
of the property in controversy was made in consideration of a credit upon
this indebtedness to an amount more than the full value thereof.   Appel-
lant's contention was, that the transfer from Bachman to Parks was only
colorable, to enable the latter to hold the property from creditors of the
former, who at that time was alleged to be insolvent, and that the pre-
tended consideration from Parks to Bachman was much less than the value
of the property; also, that the pretended transfer from Bachman to Parks
was fictitious and fraudulent, and if any indebtedness existed at all it
could only be ascertained by a settlement of the partnership business,
which had not been had.   The evidence upon the issue of fraud thus
raised was very conflicting, and a verdict for either party thereon would
be well sustained.

In September, after the transfer from Bachman to Parks in April, the
latter instituted suit to recover of the former the $5400 indebtedness
alleged to be due him as above set forth, and in this suit he gave Bachman
credit for the consideration he was to pay for the property in controversy
under the transfer thereof to him; and on the trial of the suit between ap-
pellants and appellee for the trial of the right of property, Parks was
permitted, over the objection of appellants, to introduce in evidence his
own petition in his suit against Bachman above set forth, with a lengthy
exhibit thereto attached, showing the state of accounts between them, and
the recital of a credit given to Parks for this property upon said account,
for the purpose of rebutting the charge of collusion, alleged by appellants
to exist between Parks and Bachman, resulting in such transfer.   The ex-
planation made by the court below for admitting this evidence is endorsed
on the bill of exceptions as follows:   "Approved, with the explanation
that the same [referring to the petition and exhibits aforesaid]· were
offered to rebut the presumption of collusion charged to exist between
defendant and Bachman, and was supplemented by the evidence of D. T.
Bledsoe, a reputable lawyer, to the effect that Bachman was represented
by him, and that the issues in said case were contested by him, and also
to show that defendant had credited his demand with $2000, the amount
of his several purchases."

That the admission of this evidence was error we think perfectly clear
from the reasons given by the learned ˙judge for its admission.   We do
not understand how, as against appellants, defendant could rebut this
charge of collusion by any statement he might make in the petition filed
by him against Bachman, and in which appellants were in nowise parties;
and especially could this not be done after appellants had attached this
property and appellee had filed his claim bond, and the issue of fraud and
collusion was thus being litigated.   The evidence was clearly inadmissible
and will necessitate a reversal of the case.

In their second amended tender of issues, appellants alleged that the indebtedness from Bachman to them was evidenced by twelve certain promissory notes for $100 each, in each of which a lien was reserved upon part of the machinery in controversy to secure its payment, and that these notes were merged into a judgment rendered in the suit in which the attachment under which the levy in this case was made was issued; they also alleged the insolvency of Bachman, and prayed that the issue thus raised as to the validity of this lien be litigated in this proceeding and foreclosed, and if the court found it necessary, that Bachman be made a party for this purpose.

Appellee filed a special exception to this part of appellants' issues, to the effect that this alleged lien could not be litigated in this proceeding, and the court sustained this exception; and a majority of the court are of opinion that this was error, believing that under the peculiar facts of this case appellants should have been permitted to foreclose their lien, if valid, on that portion of the property in controversy upon which it might have been shown to exist. As they had already obtained a judgment against Bachman, who was alleged to be insolvent, for the debt secured by the lien, which judgment they think may be inferred from the pleading to be still in force and not dormant, and as Bachman had conveyed all his interest in the property to Parks, they do not believe it necessary for him to be made a party to the suit for foreclosure; and as the parties, therefore, were all before the court and the property in the custody of the law, under Revised Statutes, article 4823, they do not believe there is any feature in the very speedy and informal method of procedure provided by our statute for forming and trying the issue as to the right of property which would preclude the foreclosure of a lien on the same property in the same suit between substantially the same parties, especially as that statute provides that the practice under it shall be as nearly as practicable the same as in other cases. Rev. Stats., art. 4837. They think that while under the present statute the claimant's bond secures the cost of the suit, this was not formerly so, and the judgment to be entered for costs on such bond is not peculiar to this remedy. Rev. Stats., art. 4843; 49 Texas, 170; 80 Texas, 233. In their view, while it may be that it would be simpler and better not to allow the joinder, yet they think that this objection would lie to our whole system, which seeks to settle as far as possible controversies between the same parties in one suit. For an intimation that a joinder in such cases would be proper, see Dupuy v. Ullman, Lewis & Co., 78 Texas, 341.

The writer, however, can not agree with this view of the law as being applicable to this proceeding. In their tender of issues, which was filed May 27, 1889, appellants allege that the judgment in their favor against Bachman was rendered on the 7th day of March, 1887, and it will thus be seen that more than two years elapsed between these dates, and there

is no allegation that execution had been issued so as to prevent the judgment from being dormant at the date this foreclosure was sought. If this judgment was dormant, it is settled that Bachman would be a necessary party to obtain this foreclosure (Slaughter v. Owens, 60 Texas, 668), and the writer is not prepared to say that he would not be a necessary party even though the judgment be in full force. It would seem, under our statute, that the amount due upon this judgment at the time of foreclosure would have to be ascertained (Revised Statutes, article 1340), and to do this Bachman would at least be a proper party. He should be allowed to show what part, if any, of this judgment had been paid since its rendition. An examination of the different cases in which suits have been brought in this State to foreclose liens after the rendition of judgment for the debt to pay which the lien is foreclosed, seems to disclose the fact that the debtor in the judgment has invariably been made a party to the foreclosure suit; but there are intimations in the opinion delivered in the case in 60 Texas, cited above, which would indicate that this might not be necessary in case the judgment was not dormant.

Proceeding, however, upon the idea that appellants' issues will be so amended as to show that their judgment against Bachman is still in force, and conceding that for this reason it will not be necessary that he be made a party to this proceeding, the writer does not believe that even in such case it would be proper practice to allow the joinder of these two distinct causes of action herein. Ordinarily a lien is foreclosed by filing a petition, which is answered in the usual way, but in this case it is sought to be foreclosed by a tender of issues in a statutory proceeding seemingly authorized for the sole purpose of determining as to whether or not the property levied on is subject to the writ. It must be admitted, however, that our courts have gone to great lengths in the line indicated by the views entertained by the majority of the court, and many causes of action have been permitted to be joined that under the practice obtaining in the tribunals of other States would not be allowed; but even in this State the practice is not without its limits, and the writer is aware of no case where a special proceeding, such as this, has been joined with a suit that ordinarily could be prosecuted only under the forms prescribed for cases generally, and he believes that no good purpose can be subserved by attempting to engraft on our already liberal practice an additional feature of this kind.

It will be borne in mind that appellants do not claim to have a lien upon all of the property in controversy, but only upon some of the machinery. As a basis for this proceeding appellee was required to give bond for the trial of the right to this property, conditioned as required by our statute; and if he should fail to maintain his claim, his securities would be required to pay the costs of this proceeding. So far, then, as

the trial of the question of the liability of this property to appellants' attachment is involved, the securities on appellee's claim bond are parties to this proceeding, and liable to have judgment rendered against them, from which they could prosecute an appeal; and the writer believes that this being a statutory proceeding, the liability of these securities should be measured strictly by the terms of their bond, and that they should not be forced into a litigation involving other issues than those properly raised in deciding their liability.

If the joinder of this separate and distinct cause of action is to be permitted, and plaintiffs should be successful upon one or both issues, and appellee or his securities desire to appeal from the judgment rendered, would both cases go up on such appeal, or only the one of which they desired to complain? How would the appeal bond be payable and conditioned? How would the cost of the two proceedings be adjusted? If appellants should succeed in holding the property subject both to their attachment and contract liens in the same judgment, and the securities on the claim bond should appeal by giving a supersedeas bond, what would be their liability thereon, in case the judgment should be affirmed, for having thus delayed the foreclosure proceedings? The securities on the claimant's bond, it is believed, should not be held responsible for any part of the costs incurred in litigating over the contract lien, and the adjustment of these complicated issues, it seems to the writer, would suggest the better practice to be to keep the suits separate. Certainly this is the view that has heretofore been entertained by the profession.

Commencing in 12 Texas, mortgagees out of possession attempted to maintain this statutory proceeding for the trial of the right of property, and since that time numerous cases have arisen in which the plaintiffs therein occupied the same position in reference to the property claimed as appellants in this case, but it seems that none of them understood that they would have the right to foreclose their respective mortgages in case they failed to maintain their right to the property itself.

The majority of the court, however, as indicated above, are of the opinion that the rights of the different parties can be sufficiently protected in the judgment that is rendered, and that it will be more in harmony with our system of practice to allow, upon proper pleading, all claims in reference to any of the property in controversy to be settled in this proceeding, without driving the parties to the necessity of instituting a separate suit, and the action of the court below in not permitting this to be done will be held to be error.

Some of the more recent cases illustrating the practice in our courts in reference to the joinder and misjoinder of causes of action are as follows: Stewart v. Gordon, 65 Texas, 344; Bank v. Emery, 78 Texas, 498; Callahan v. Houston, 78 Texas, 494; Construction Co. v. Meddlegge, 75 Texas, 634.

There are quite a number of other assignments of error, but we believe no useful purpose could be subserved in their discussion, as the questions suggested therein are not likely to arise upon another trial. We will add, however, that the practice of submitting cases upon special issues is not only recognized as being proper by our decisions, but is also left to the discretion of the trial judge by our statute. 1 Sayles' Civ. Stats., art. 1333.

We will also add, that we are of opinion that if appellants had a contract lien, as alleged, upon a part of the machinery in controversy, this lien was not waived by suing out an attachment upon the debt secured by such lien. We see no such inconsistency in the two suits as that the suing out of the attachment should have this effect. Allyn & Co. v. Willis & Bro., 65 Texas, 72; Byram v. Stout, 127 Ind., 195. Since McAlpin v. Burnett, 19 Texas, 497, it has been repeatedly held in this State, that suing upon a note secured by a lien without having the lien foreclosed is not a waiver of such lien. Slaughter v. Owens, 60 Texas, 668. The authorities referred to in Jones on Chattel Mortgages, section 565, intimating a different view, are reviewed in Byram v. Stout, 127 Indiana, above cited. In this State a mortgage only has the effect of a lien on the property, as in Indiana.

For the errors above indicated, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*

Delivered December 13, 1892.